IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| DAVID A. McDONALD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | CIVIL ACTION NO. 1:23-cv-464-TFM-N |
| ) | |
| DARRELL WAYNE GRIMSLEY, JR., ) | |
| *et al.*, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is *Defendants' Motion to Compel Arbitration* (Doc. 34, filed May 14, 2024). Having considered the motion, response, reply, evidence in support of the motion, and the relevant law, the Court finds the motion to compel arbitration is due to be **GRANTED**.

## I.     JURISDICTION

The Court has subject matter jurisdiction over the claims in this action pursuant to 28 U.S.C. § 1332 (diversity of citizenship). *See* Doc. 38. The Court has personal jurisdiction over the claims in this action because the events that gave rise to this action occurred within this district. Doc. 45; *see also Consol. Dev. Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1291-92 (11th Cir. 2000) ("Specific jurisdiction arises out of a party's activities in the forum that are related to the cause of action alleged in the complaint. . . . General personal jurisdiction, on the other hand, arises from a defendant's contacts with the forum that are unrelated to the cause of action being litigated. The due process requirements for general personal jurisdiction are more stringent than for specific personal jurisdiction, and require a showing of continuous and systematic general business contacts between the defendant and the forum state.").

Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events that gave rise to the claims in this matter occurred in this judicial district. Doc. 45; *see also* 28 U.S.C. § 1391(b)(2) ("A civil action may be brought in a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred . . . .").

## II. BACKGROUND

### A. Factual Background

This matter arises out of a failed business relationship. Plaintiff David A. McDonald ("McDonald" or "Plaintiff") is a practicing attorney and has been a member in good standing with the Alabama Bar for over thirty (30) years. Doc. 45 at 2. Defendant Darrell Wayne Grimsley, Jr. ("Grimsley") was the chief executive officer and a member of Defendant Liberty Rent, LLC ("Liberty Rent"), and the president of Data Holdings, Inc. ("Data Holdings"), (collectively, Grimsley, Liberty Rent, and Data Holdings will be referred to as "Defendants"). *Id.* Liberty Rent was formed by Grimsley in 2021 as a successor to Liberty Rent Guarantee, LLC ("LRG"), an Alabama corporation. *Id.* Data Holdings was formed by Grimsley in 2021 to own Liberty Rent and thereby accommodate a potential investor. *Id.* Grimsley formed LRG in 2014, and the business model was to assist prospective tenants to qualify to rent apartments by guaranteeing the tenant's rent and protecting the prospective property manager from potential loss. *Id.* at 3.

Beginning in 2020, Grimsley attempted to recruit McDonald to LRG. *Id.* at 4. After persistent overtures from Grimsley and certain promises of compensation, McDonald left his law practice to join Grimsley as director and general counsel for Liberty Rent in February 2022. *See id.* at 8-11; Doc. 33-1 at 2.

Liberty Rent used a third-party administrator, SourcePointe of Alabama, LLC ("SourcePointe") to manage its employment agreements, compensation, benefits, and other

employment matters. Doc. 33-1 at 2. SourcePointe was acquired by CoAdvantage Corporation ("CoAdvantage") in January 2021 and Liberty Rent became its client. Doc. 49-1 at 2. Gary Gilbert ("Gilbert"), a senior programmer at CoAdvantage who has worked on Liberty Rent's electronic records and files, states new hires use a system called PrismHR. *Id.* at 2. Gilbert states a new hire creates an online account and unique password to set up and access their profile. *Id.* at 3. Gilbert states a new hire cannot finalize the onboarding process through PrismHR unless they review and execute all of the sections of the onboarding process, which includes the arbitration agreement. *Id.* Gilbert states a new hire must click an e-sign button to accept their employee agreement and arbitration agreement. *Id.* Gilbert states once a new hire accepts a document, the action is recorded in the PrismHR database and the information associated with the acceptance, including the acceptance, date and time of the acceptance, and the IP address of the device that was used to accept the document. *Id.* Gilbert states CoAdvantage's electronic records show McDonald accepted the employee agreement and arbitration agreement through PrismHR on February 14, 2022, at 12:28 p.m., both of which documents are attached as exhibits to his declaration. *Id.*

> The arbitration agreement at issue reads in relevant part:
>
> In exchange for being considered for employment and/or continued employment, Employee agrees to resolve any and all disputes related in any manner whatsoever to his/her employment with LIBERTY RENT, LLC ("Client") or with **SourcePointe, LLC** ("SourcePointe"), by binding arbitration pursuant to the rules of this Agreement and the American Arbitration Association ("AAA").
>
> . . .
>
> The Client, SourcePointe, and the Employee agree that the Federal Arbitration Act governs the enforceability of any and all of the arbitration provisions of this Agreement. The Parties intend that this Agreement shall encompass the broadest range of matters that may be arbitrated under applicable law. The Parties further agree that any question as to the scope of this Agreement shall, to the extent permitted by law, be determined by the arbitrator.

Doc. 33-2 at 3-4.

By March 2022, McDonald concluded Grimsley's companies were subject to certain legal perils in some states that they operated, and their relationship deteriorated over time, which culminated in McDonald's termination by Grimsley. Doc. 45 at 11-12.

**B.      Procedural Background**

This matter was originally filed in the Circuit Court of Baldwin County, Alabama, on October 24, 2023. Doc. 3. In the original complaint, Plaintiff brought claims against Defendants for breach of contract, fraud in the inducement, negligence/wantonness, and fraud. *Id.* Defendants removed this matter to this Court on December 8, 2023. Doc. 1.

On December 15, 2023, Grimsley filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim. Doc. 9. On the same date, Data Holdings and Liberty Rent filed a similar motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) and incorporated the arguments presented by Grimsley in his motion. Doc. 10. The Court entered a briefing schedule for the motions to dismiss. Doc. 13. On December 28, 2023, Plaintiff filed a motion to remand (Doc. 18) for which the Court entered a briefing schedule (Doc. 19). On January 4, 2024, Plaintiff field a motion to stay, or in the alternative, motion for additional time to respond to the motions to dismiss (Doc. 21), and the Court granted the motion to stay the briefing for the motions to dismiss pending the Court's ruling on the motion to remand (Doc. 23).

On May 15, 2024, Defendants filed the instant motion to compel arbitration (Doc. 34), which the Court held in abeyance pending the resolution of the motion to remand (Doc. 36). On July 24, 2024, the Court denied the motion to remand (Doc. 38) then ordered Plaintiff to amend his complaint by August 16, 2024, denied as moot the motions to dismiss, and entered a briefing schedule for the motion to compel arbitration (Doc. 39).

Plaintiff timely filed his first amended complaint pursuant to the Court's Order. Doc. 45. Plaintiff brings against Defendants claims of breach of contract (Counts 1 and 2) and fraud/fraud in the inducement (Count 3). *Id.* On September 10, 2024, Defendants filed their answer to the first amended complaint (Doc. 52) and asserted a counterclaim to which Plaintiff timely filed his answer (Doc. 56). On December 31, 2024, Plaintiff filed a motion for leave to amend his answer to Defendants' counterclaim (Doc. 57), which the granted (Doc. 62), and Plaintiff timely filed his amended answer to the counterclaim (Doc. 63).

Plaintiff timely filed his response (Doc. 46), and Defendants timely file their reply (Doc. 49), to the motion to compel arbitration, and upon Plaintiff's motion (Doc. 50), the Court granted him leave to file a sur-reply, which was timely filed (Docs. 51, 55). The motion to compel arbitration is ripe for review and the Court finds oral argument is unnecessary to resolve the issues that are presented.

### III.   STANDARD OF REVIEW

**A.   Arbitration Agreement**

> [A] district court may conclude as a matter of law that parties did or did not enter into an arbitration agreement only if "there is no genuine dispute as to any material fact" concerning the formation of such an agreement. FED. R. CIV. P. 56(a). A dispute is not "'genuine' if it is unsupported by the evidence or is created by evidence that is 'merely colorable' or 'not significantly probative.'" *Baloco v. Drummond Co.*, 767 F.3d 1229, 1246 (11th Cir. 2014) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986), *cert. denied*, - U.S. -, 136 S. Ct. 410, 193 L. Ed. 2d 317 (2015). . . . "[C]onclusory allegations without specific supporting facts have no probative value" for a party resisting summary judgment. *See Leigh v. Warner Bros.*, 212 F.3d 1210, 1217 (11th Cir. 2000) (quotation marks omitted).

*Bazemore v. Jefferson Capital Sys., LLC*, 827 F.3d 1325, 1333 (11th Cir. 2016).

Therefore, a motion to compel arbitration is "summary-judgment-like" in nature, and an order compelling arbitration is "in effect a summary disposition of the issue of whether or not there

has been a meeting of the minds on the agreement to arbitrate." *In re Checking Account Overdraft Litigation*, 754 F.3d 1290, 1294 (11th Cir. 2014) (quoting *Magnolia Capital Advisors, Inc. v. Bear Stearns & Co.*, 272 F. App'x 782, 785 (11th Cir. 2008) (per curiam)). The Court will view the evidence in the light most favorable to Plaintiff. *Moore ex rel. Moore v. Reese*, 637 F.3d 1220, 1232 (11th Cir. 2011) (citing *Rosario v. Am. Corrective Counseling Servs., Inc.*, 506 F.3d 1039, 1043 (11th Cir. 2007)).

**B.   Summary Judgment**

A party in a lawsuit may move a court to enter summary judgment before trial. FED. R. CIV. P. 56(a), (b). Summary judgment is appropriate when the moving party establishes there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *see also Greenberg v. BellSouth Telecomms., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) ("Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law.'"). "[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also Ritchey v. S. Nuclear Operating Co.,* 423 F. App'x 955 (11th Cir. 2011) (quoting *Anderson*, 477 U.S. at 248).[1] At the summary judgment juncture, the court does not "weigh the evidence and determine the truth of the matter," but solely "determine[s] whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. Only disputes about the material facts will preclude the granting of summary judgment. *Id*.

---

[1] In this Circuit, "[u]npublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. R. 36-2 (effective Dec. 1, 2014); *see also Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 n.1 (11th Cir. 2015) (per curiam) ("Cases printed in the Federal Appendix are cited as persuasive authority.").

The movant bears the initial burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A party must support its assertion that there is no genuine issue of material fact by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1). The admissibility of evidence is subject to the same standards and rules that govern admissibility of evidence at trial. *Clemons v. Dougherty County*, 684 F.2d 1365, 1369 n.5 (11th Cir. 1982) (citing *Pan-Islamic Trade Corp. v. Exxon Corp.*, 632 F.2d 539, 556 (5th Cir. 1980)).

Once the movant meets its burden under Fed. R. Civ. P. 56, the non-movant must go beyond the pleadings and designate specific facts showing there is a genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). "A genuine issue of material fact exists when 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Moore ex rel. Moore v. Reese*, 637 F.3d 1220, 1232 (11th Cir. 2011) (quoting *Anderson*, 477 U.S. at 248). The court must view the facts and draw all reasonable inferences in favor of the non-moving party. *Id*. (citing *Rosario v. Am. Corrective Counseling Servs., Inc.*, 506 F.3d 1039, 1043 (11th Cir. 2007)); *Greenberg*, 498 F.3d at 1265 ("We view the evidence and all factual inferences therefrom in the light most favorable to the party opposing the motion."). However, to avoid summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586 (citations omitted). Conclusory assertions, unsupported by specific facts, that are presented in affidavits opposing the motion for summary judgment are likewise insufficient to defeat a proper

motion for summary judgment. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). "Speculation does not create a *genuine* issue of fact." *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005) (citation omitted). If the evidence is merely colorable or is not significantly probative, summary judgment may be granted. *See Anderson*, 477 U.S. at 249-50 (emphasis in original) (citations omitted). In short, summary judgment is proper after adequate time for discovery and upon motion against a party who fails to make a showing that is sufficient to establish the existence of an element that is essential to that party's case. *Celotex*, 477 U.S. at 322. Finally, Fed. R. Civ. P. 56(e) also provides that "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may: (1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it; or (4) issue any other appropriate order." FED. R. CIV. P. 56(e).

### IV. DISCUSSION AND ANALYSIS

> In 1925, Congress enacted the [Federal Arbitration Act ("FAA")] "[t]o overcome judicial resistance to arbitration," *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443, 126 S. Ct. 1204, 1207, 163 L. Ed. 2d 1038 (2006), and to declare a "'national policy favoring arbitration' of claims that parties contract to settle in that manner." *Preston v. Ferrer*, 552 U.S. 346, 353, 128 S. Ct. 978, 983, 169 L. Ed. 2d 917 (2008) (quoting *Southland Corp. v. Keating*, 465 U.S. 1, 10, 104 S. Ct. 852, 858, 79 L. Ed. 2d 1 (1984)). Three sections of the FAA play particularly important roles in achieving that purpose. 9 U.S.C. § 2 – the "primary substantive provision" of the FAA, *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 103 S. Ct. 927, 941, 74 L. Ed. 2d 765 (1983) – provides that arbitration agreements in contracts "involving commerce" are "valid, irrevocable, and enforceable. 9 U.S.C. § 3 directs courts to stay their proceedings in any case raising a dispute on an issue referable to arbitration. And 9 U.S.C. § 4 "authorizes a federal district court to issue an order compelling arbitration if there has been a 'failure, neglect, or refusal' to comply with [an] arbitration agreement." *Shearson/Am. Exp., Inc. v. McMahon*, 482 U.S. 220, 226, 107 S. Ct. 2332, 2337, 96 L. Ed. 2d 185 (1987) (quoting 9 U.S.C. § 4).

> As these provisions embody the "liberal federal policy favoring arbitration agreements," *Caley v. Gulfstream Aerospace Corp.,* 428 F.3d 1359, 1367 (11th Cir. 2005) (citation and quotation marks omitted), "doubts concerning the *scope* of arbitrable issues should be resolved in favor or arbitration." *Bazemore v. Jefferson Capital Sys., LLC*, 827 F.3d 1325, 1329 (11th Cir. 2016) (emphasis added). This "presumption," however, "does not apply to disputes concerning whether an agreement to arbitrate has been made." *Id.* (citation omitted).
>
> When . . . a party moves a district court to compel arbitration under the FAA, the court must first determine whether "the making of the agreement for arbitration or the failure to comply therewith is . . . in issue." 9 U.S.C. § 4. If, under a "summary judgment-like standard," the district court concludes that there "is no genuine dispute as to any material fact concerning the formation of such an agreement," it "may conclude as a matter of law that [the] parties did or did not enter into an arbitration agreement." *Bazemore*, 827 F.3d at 1333 (citation and quotation marks omitted). If, on the other hand, the making of the agreement is in issue, "the court shall proceed summarily to the trial thereof." 9 U.S.C. § 4.
>
> As in a traditional summary judgment motion, an examination of substantive law determines which facts are material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). The "threshold question of whether an arbitration agreement exists at all is 'simply a matter of contract.'" *Bazemore*, 827 F.3d at 1329 (quoting *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 943, 115 S. Ct. 1920, 1924, 131 L. Ed. 2d 985 (1995)). Thus, just as "state law generally governs whether an enforceable contract exists," state law generally governs whether an enforceable "agreement to arbitrate exists" as well. *Caley*, 428 F.3d at 1368. To prove the existence of a contract under Alabama law, the party seeking to enforce the contract must prove by a preponderance of the evidence: "an offer[,] an acceptance, consideration, and mutual assent to terms essential to the formation of a contract." *Shaffer v. Regions Fin. Corp.*, 29 So. 3d 872, 880 (Ala. 2009).

*Burch v. P.J. Cheese, Inc.*, 861 F.3d 1338, 1345-46 (11th Cir. 2017) (footnote omitted).

Additionally, under Alabama law, "[a]rbitration provisions are to be treated like any other contractual provision." *Serv. Corp. Int'l v. Fulmer*, 883 So. 2d 621, 633 n.15 (Ala. 2003). "A party seeking to compel arbitration has the burden of proving: (1) the existence of a contract containing an arbitration agreement and (2) that the underlying contract evidences a transaction affecting interstate commerce." *Kenworth of Birmingham, Inc. v. Langley*, 828 So. 2d 288, 290 (Ala. 2002).

Here, Defendants have produced an arbitration agreement that purports to have been electronically signed by Plaintiff and reads, "[i]n exchange for being considered for employment and/or continued employment, Employee agrees to resolve any and all disputes related in any manner whatsoever to his/her employment with [Liberty Rent] or with [SourcePointe] by binding arbitration . . . ." *See* Doc. 49-1. The arbitration agreement that Defendants produce shows the necessary elements of a contract to arbitrate. Further, the underlying employment contract evidences a transaction that affects interstate commerce. *See, e.g., Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003) ("Because the statute provides for 'the enforcement of arbitration agreements within the full reach of the Commerce Clause,' *Perry v. Thomas*, 482 U.S. 483, 490, 107 S. Ct. 2520, 96 L. Ed. 2d 426 (1987), it is perfectly clear that the FAA encompasses a wider range of transactions than those actually 'in commerce' – that is, 'within the flow of interstate commerce," *Allied-Bruce Terminix Cos.,* [513 U.S. 265,] 273 [(1995)] (internal quotation marks, citation, and emphasis omitted)). The Court finds Defendants have met their burden to show Plaintiff executed an arbitration agreement.

Once the movant meets its burden under a summary-judgment standard, the non-movant must go beyond the pleadings and designate specific facts showing there is a genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). "A genuine issue of material fact exists when 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Moore ex rel. Moore v. Reese*, 637 F.3d 1220, 1232 (11th Cir. 2011) (quoting *Anderson*, 477 U.S. at 248). The court must view the facts and draw all reasonable inferences in favor of the non-moving party. *Id.* (citing *Rosario v. Am. Corrective Counseling Servs., Inc.*, 506 F.3d 1039, 1043 (11th Cir. 2007)); *Greenberg v. BellSouth Telecomms., Inc.*, 498 F.3d 1258, 1265 (11th Cir. 2007) ("We view the evidence and all factual

inferences therefrom in the light most favorable to the party opposing the motion."). However, to avoid summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586 (citations omitted). Conclusory assertions, unsupported by specific facts, that are presented in affidavits opposing the motion for summary judgment are likewise insufficient to defeat a proper motion that is reviewed under a summary-judgment standard. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). "Speculation does not create a *genuine* issue of fact." *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005) (citation omitted).

Plaintiff argues, under Alabama's Uniform Electronic Transactions Act ("the UETA"), Ala. Code §§ 8-1A-1 through 20, without proof of an agreement between Plaintiff and Defendants to contract electronically, his purported electronic signature on the arbitration agreement is without legal consequence. Doc. 46 at 6. Further, Plaintiff submits his affidavit in which he states he did not agree to arbitration with Defendants, whether by electronic signature or otherwise. *Id.* at 6-9.

As to whether Plaintiff's purported electronic signature on the arbitration agreement is lawful pursuant to Alabama law, the Court looks to the UETA, which "applies to any electronic record or electronic signatures created, generated, sent, communicated, received or stored on or after January 1, 2002." ALA. CODE § 8-1A-4. The UETA "applies only to transactions between parties each of which has agreed to conduct transactions by electronic means." § 8-1A-5(b). "Whether the parties agree to conduct a transaction by electronic means is determined from the context and surrounding circumstances, including the parties' conduct." *Id.*

> (a) An electronic record or electronic signature is attributable to a person if it was the act of the person. The act of the person may be shown in any manner, including a showing of the efficacy of any security procedure applied to determine the person to which the electronic record or electronic signature was attributable.

>(b) The effect of an electronic record or electronic signature attributed to a person under subsection (a) is determined from the context and surrounding circumstances at the time of its creation, execution, or adoption, including the parties' agreement, if any, and otherwise as provided by law.

§ 8-1A-9(a)-(b).

The crux of Plaintiff's argument is the purported electronic signature on the arbitration agreement is not attributable to him. Whether the purported electronic signature is unlawful under the UETA because, as Plaintiff argues, he did not agree to contract electronically is belied by the fact that, if the purported signatures on the onboarding documents were his, it would be clear evidence of an intent to contract by those means based on the context and surrounding circumstances.

As to whether the purported electronic signature on the arbitration agreement is attributable to Plaintiff, as part of his onboarding process with Liberty Rent, he was required to create an online account and unique password to set up and access his profile, as well as execute the required onboarding documents. Doc. 49-1 at 2-3. Plaintiff denies he signed, executed, agreed to, reviewed, or authorized someone else to execute, any of the purported onboarding documents, including the arbitration agreement. Doc. 46-1 at 1-2. Plaintiff does not deny the online account and unique password that were associated with him on PrismHR are his, and Defendants have provided evidence Plaintiff's account was used to log into the system then electronically sign all of the required onboarding documents, including the arbitration agreement. In Plaintiff's sur-reply, he argues Defendants have not shown the IP address of the device that was used to execute the relevant documents is in some way associated with him or if he had exclusive access to the device. Doc. 55. However, Plaintiff does not deny the IP address from which the onboarding documents were executed belongs to a device that he controls. Plaintiff has failed to show there is a genuine issue of material fact and has only presented conclusory assertions in his affidavit,

which is insufficient to defeat a proper motion under the applied standard of review. *See Lujan*, 497 U.S. at 888. Plaintiff does not request additional discovery in this matter as to the issue that is presented in the instant motion but merely demands a jury trial if the Court finds a genuine issue of material fact exists. Put simply, Plaintiff failed to produce evidence to properly rebut Defendants' evidence, nor did he requestion an additional opportunity to do so. Therefore, Defendants' motion to compel arbitration is due to be granted.

Defendants request the Court stay this matter pending the arbitration of Plaintiff's instant claims. Doc. 34. The FAA states the federal courts "shall on application of one of the parties stay" a proceeding where any issue in that proceeding is referable to arbitration. 9 U.S.C. § 3; *see also Caley v. Gulfstream Aerospace Corp.,* 428 F.3d 1359, 1369 (11th Cir. 2005) ("[T]he FAA's enforcement sections require a court to stay a proceeding where the issue in the proceeding 'is referable to arbitration under an *agreement in writing* for such arbitration . . . .'") (emphasis in original); *Bender v. A.G. Edwards & Sons, Inc.*, 971 F.2d 698, 699 (11th Cir. 1992) ("The district court properly found that the state law claims were subject to arbitration, but erred in dismissing the claims rather than staying them. Upon finding that a claim is subject to an arbitration agreement, the court should order that the action be stayed pending arbitration.").

Therefore, Defendants' request to stay this matter pending arbitration is due to be granted.

## V.    CONCLUSION

Accordingly, it is hereby **ORDERED** as follows:

(1)    Defendants' Motion to Compel Arbitration (Doc. 34) is **GRANTED.**

(2)    This matter is **STAYED** pending the outcome of arbitration, and the Clerk of Court is **DIRECTED** to place this matter on the administratively closed docket; and

(3)    The parties are **ORDERED** to file with the Court a joint notice within seven (7)

days of the completion of arbitration.

    **DONE** and **ORDERED** this the 5th day of March 2025.

                                                           s/Terry F. Moorer  
                                                          TERRY F. MOORER  
                                                          UNITED STATES DISTRICT JUDGE